UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

GARY LABARBERA and THEODORE KING,
as Trustees and Fiduciaries of the Local 282
Welfare Trust Fund, the Local 282 Pension
Trust Fund, the Local 282 Annuity Trust Fund,
and the Local 282 Job Training Trust Fund,          **MEMORANDUM & ORDER**

                                    Plaintiffs,       Consolidated Civil Action Nos.
                                                      03-6112; 04-5178
            -against-                                 (DRH) (ARL)

CRETTY ENTERPRISES, INC.  and
ASBESTOS TRANSPORTATION
COMPANY, INC.,

                                    Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Cohen, Weiss and Simon LLP**
Attorneys for Plaintiffs
330 West 42nd Street
New York, New York 10036
By:    Elizabeth O'Leary, Esq.
       Bruce S. Levine, Esq.
       Oriana Vigliotti, Esq.

**Weinberg, Gross & Pergament LLP**
Attorneys for Defendants
400 Garden City Plaza, suite 403
Garden City, New York 11530
By:    Marc A. Pergament, Esq.

**HURLEY, Senior District Judge:**

        Plaintiffs, the fiduciaries of Local 282 employee benefit plans, ("Plaintiffs") seek to

recover from Defendants Cretty Enterprises Inc. ("Cretty") and Asbestos Transportation

Company, Inc. ("Asbestos") (collectively "Defendants") contributions allegedly due under collective bargaining agreements ("CBAs"), together with certain other relief. Presently before the Court is a motion by Plaintiffs for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

## Background

The following facts are undisputed unless otherwise indicated.

Plaintiffs are the fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund and the Local 282 Job Training Trust Fund (collectively the "Funds") within the meaning of section 3(21)(A) of the Employee Retirement Income Summary Security Act ("ERISA"), 29 U.S.C. § 1002(21)(1). (Defs.' Counterstatement to Pls.' Statement of Undisputed Material Fact ("Counterstatement") ¶ 1.[1]) The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust and are financed solely by contributions that are made to the Funds by employers that are parties to CBAs with Local 282 ("Contributing Employers") and the investment income generated on these contributions. The funds provide welfare, pension, annuity and job training benefits to employees covered by the CBAs who meet the Funds' eligibility requirements. ( *Id*. at ¶¶ 3-4.)

Contribution rates to the Funds are set forth in the CBAs. Contributing Employers are required to contribute to the Funds for all hours worked by or paid to their employees. The Trust Agreement provides that the books and records of Contributing Employers, as well as any other

---

[1] Defendants filed a "mirror" counterstatement, setting forth Plaintiffs' statement of undisputed material fact and then Defendants' response thereto. Accordingly, the Court shall refer to the Counterstatement.

business entity which is affiliated with said Contributing Employers and either employs persons performing the same type of work as employees of the Contributing Employers or is part of a group of trades or businesses under common control, are subject to periodic audit to verify the accuracy of contributions and identify individuals who are eligible for Fund benefits. (*Id.* at ¶¶ 5-9.) A Contributing Employer who fails to pay contributions when due is required to pay the delinquent contributions, interest from the first day of the month when the payment was due through the date of payment, liquidated damages, audit fees and attorneys' fees and costs. Contributing Employers are required to provide a surety bond to facilitate and guarantee, *inter alia*, payment of contributions to the Funds. (*Id.* at ¶¶ 12-14.)

Cretty, a New York corporation which has been in existence since 1993, is in the business of demolition and debris, asbestos and toxic waste removal and is an employer within the meaning of ERISA.[2] (*Id.* at ¶¶ 19-20.) It is located at 2 Moriches Island Road, Shirley, New York. Gary Cretty was president and sole owner of Cretty from its inception until the mid 2000's, when he transferred ownership of the company to his daughter.[3] Gary Cretty admits that he has continued to have a role in the day to day activities of Cretty since the ownership transfer.[4]

---

[2] Cretty's initial business plan focused on moving freight between North Carolina and the northeastern states. According to Defendants, when that plan proved less than successful, the focus of Cretty's business changed. The Court notes that Defendants have not submitted any evidence that this North Carolina freight business continued past 1999. *See* Aff. of Kenneth Smith at Ex. 5 & 7.

[3] The exact date of the transfer is not contained in the parties' submissions. It is undisputed, however, that the transfer took place after the commencement of this action.

[4] At his deposition, Cretty testified that he has "continued to have a role in the day to day activities" of Cretty, doing "whatever needs to be done." Tr. at 11. In his affidavit submitted in

(*Id.* at ¶¶ 21-23.)  Cretty has been a party to CBAs with Local 282 covering the period July 1, 1999 through June 30, 2005, Gary Cretty having signed the agreements on Cretty's behalf.  (*Id.* at ¶¶ 23-25.)

Asbestos is a New York corporation which has been in existence since 1989.  It is in the business of asbestos and toxic waste removal in the State of New York and also transports and disposes of waste removal to out of state facilities.  Asbestos is not, and has not been, a signatory to any collective bargaining agreement with Local 282.  (*Id.* at ¶¶ 28-29 & 32.)  Like Cretty, Asbestos is located at 2 Moriches Island Road, Shirley, New York, although each company has its own telephone number.  Gary Cretty has been the president and sole shareholder of Asbestos since the mid-1990's when he took over the company from his father. (*Id.* at ¶¶ 30-31.)

Cretty and Asbestos share office facilities, including office space and office equipment, as well as clerical employees.  These common office facilities are leased from Asbestos Transportation and Disposal Company, Inc., a third entity located at 2 Moriches Island Road and owned by Cretty's fiancé.  Cretty and Asbestos share the same accountant and the same bookkeeper.  Although the two companies have separate telephone numbers, the office personnel that provide services to Cretty are employed by Asbestos.  The two companies also share common equipment and there is a complete intermingling of trucks.  Cretty and Asbestos share common drivers and use the same dispatchers with incoming jobs for both companies listed on a common dispatch board.  As Defendants put it, "[s]ince all of the contracts that Asbestos and

_____

opposition to the motion for summary judgment, Cretty asserts that he has "maintained a limited role in assisting [his daughter] on a when needed basis."

Cretty performed were through contracts between Asbestos and the customers of Asbestos, the customer would contact one of Asbestos's dispatchers and request a driver for a union job or a non-union-job." *Id.* at ¶¶ 45, 47-50, 52-56, 58.)

Defendants contend that there was apparently a time when the union would allow Asbestos' non-union drivers onto a union site although the customer that engaged Asbestos would then be back billed based on the number of drivers that were sent to the site. Back billing was a method by which the unions recouped the benefit payments that the union believed should have been paid had Asbestos sent union drivers. This apparently became a significant expense that Asbestos' customers did not want to absorb and that unions did not want the administrative burden of monitoring. As a result, by the late 1990's, non-union drivers were denied access to sites requiring union drivers. In order for Asbestos to provide services to a union site it was required to subcontract the work to drivers of another entity and have those drivers operate Asbestos' trucks under Asbestos' permits, a practice about which Asbestos was wary. Then, sometime in late 1999, "a[n unidentified] member of Local 282" suggested that Asbestos have its employees join 282 so that employees could work at projects that required drivers who were members of Local 282. As a result, Cretty became a signatory to the Local 282 collective bargaining agreement. Asbestos did not become a signatory because it would have had to substantially increase the rates that it charged to its customers in order to afford the additional compensation and benefit contributions it would be responsible for. Cretty offered those Asbestos drivers who had proven to be capable and dependable and who desired to become members of Local 282 an opportunity to drive for Cretty on union projects. All of the work performed by Asbestos and Cretty was through contracts obtained by Asbestos. When a

customer specified that it was a union job, Asbestos would subcontract to Cretty with Cretty leasing a driver to Asbestos. Apparently there were not enough union jobs for Cretty to employ drivers on a full-time basis. Accordingly, when Cretty did not have work for its drivers, Asbestos would employ the drivers at rates of pay that were less than the union rates and without paying benefits to Local 282 on behalf of the employees. Drivers never worked for both Asbestos and Cretty on any given day.

It is undisputed that Asbestos did not become a signatory to any Local 282 collective bargaining agreement but rather used Cretty to provide union labor to Asbestos' customers on request. (Counterstatement at ¶ 62.) The wage rate paid to drivers depended on whether the driver was being paid by Cretty, in which case the rates provided in the CBAs were paid and contributions were made to Local 282 Funds, or was being paid by Asbestos, in which case no contributions were remitted to the Funds and lower wages were paid. (*Id.* at ¶¶ 63-64.)

Plaintiffs commenced this action on December 3, 2003 seeking to compel an audit of the books and records of both Cretty and Asbestos. In January 2005, an amended complaint was filed alleging that Cretty and Asbestos share a single employer, joint employer and/or alter ego relationship. In the meantime, a second action was commenced against Cretty in November 2004 as a result of Cretty's alleged failure to comply with its obligation to provide a bond or alternate security. The two actions were consolidated on May 23, 2005. After the commencement of these actions, Cretty submitted to an audit by the Funds for the period from December 28, 2000 through June 30, 2003. The auditor determined that for this period Cretty owed contributions of $4,341.82, with interest through February 7, 2007 in the amount of $3,290.17. Asbestos submitted to an audit for the period December 28, 2000 through December 31, 2003. The

auditor determined Asbestos owed $119,482.85, with interest due through February 5, 2007 in

the amount of $86,500.67.[5]   Cretty and Asbestos refused to submit to an audit for the periods

July 1, 2003 through June 30, 2005 and January 1, 2004 through June 30, 2005 respectively.  The

auditor determined the contribution amount due from Cretty for the relevant period, based on the

Agreement's estimate formula, to be $16,243.20 with interest due through February 5, 2007 in

the amount of $7,421.82.  The auditor was unable to perform an estimated audit of Asbestos for

the period January 1, 2004 through June 30, 2005.  (*Id.* at ¶¶ 36-39.)

At the conclusion of discovery, Plaintiffs filed the instant motion seeking summary

judgment against the Defendants.  Plaintiffs assert that Cretty and Asbestos are both liable to the

Funds based on their single employer, joint employer and/or alter ego relationship and therefore

they should submit to audit for the years 2003 through 2005 and pay any amounts found owing

on the audits, together with delinquent contributions, interest, liquidated damages and attorneys'

fees and costs.

## Discussion

### I. Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate

where admissible evidence in the form of affidavits, deposition transcripts, or other

documentation demonstrates both the absence of a genuine issue of material fact and one party's

entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d

712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are

---

[5] Defendants admit these were the results of the audit and do not challenge the amounts, although Asbestos denies it is liable for any unpaid contributions.

material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement the affiant have personal knowledge and be competent to testify to the matters asserted in the

affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or

the allegations in its pleadings.  *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996);

*see also* Fed. R. Civ. P. 56(e).  More particularly, although "summary judgment should be used

sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the

plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a

trial simply because the determinative issue focuses upon the defendant's state of mind."  *Dister

v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988).  "The summary judgment rule would

be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a

talisman to defeat an otherwise valid motion."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.

1985).

## II.  The Single Employer Doctrine

Under the single employer doctrine, two nominally distinct enterprises will be joint and

severally liable under the CBAs signed by the other when the two act as a "single integrated

enterprise."  *Lihli Fashions Corp. v. Nat'l Labor Relations Bd.*, 80 F.3d 743, 747 (2d Cir. 1996).

If the two nominally separate enterprises constitute a single employer *and* together they represent

an appropriate employee bargaining unit then each is bound to the obligations of any collective

bargaining agreement signed by the other.  *Id.; see also Brown v.  Sandimo Mat'ls*, 250 F.3d 120,

128 n.2 (2d Cir. 2001).

Whether two companies will be considered a single employer "depends on all the

circumstance of the case" and whether there is "an absence of an arm's length relationship found

among unintegrated companies."  *Id.*   The factors to be considered in determining whether the

two entities act as a single integrated enterprise are the "interrelationship of operations, common

management, centralized control of labor relations and common ownership," as well as "the use

of common office facilities and equipment and family connections between or among the various enterprises." *Lihli,* 80 F.3d at 747 (citing *Radio & Television Broadcast Tech. Local Union 1264 v. Broadcast Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965) (per curiam); *Three Sisters Sportswear Co.*, 312 N.L.R.B. 853, 1993 WL 398465 at *15 (N.L.R.B. Sept. 30 1993)). "[N]ot every factor need be present, and no one particular factor is controlling." *Lihli,* 80 F.3d at 747.

The undisputed facts in this case mandate that, as a matter of law, Cretty and Asbestos are a single employer. The interrelationship of operations is met as the two corporations share office space at 2 Moriches Island Road, Shirley, New York and the office support functions for both are provided by Asbestos employees. The companies are in the same business of hauling waste removal, and use the same trucks and accountant. They also use the same office staff and they exchange drivers. Common management and ownership exist as Gary Cretty: (1) owned and ran both corporations from at least 1999 to the mid 2000's; (2) did not transfer ownership of Cretty until after the commencement of this action and then transferred ownership to his daughter; and (3) remained involved in the day to day affairs of Cretty even after the transfer. *See Bricklayers & Allied Craftworkers Local 2 v. C.G. Yantch, Inc.*, 316 F. Supp. 2d 130, 143 (N.D.N.Y. 2003); *LaBarbera v. C. Volante Corp.*, 164 F. Supp. 2d 321, 325-26 (E.D.N.Y. 2001). *See also A & P Brush Mfg. Corp. v. Nat'l Labor Relations Bd.*, 140 F.3d 216, 220 (2d Cir. 1998) (finding common ownership where companies owned by mother and son).

Defendants raise several arguments which, they contend preclude a finding that Cretty and Asbestos are a single employer. The Court shall address these arguments *ad seriatim*.

First, it is of no significance that Asbestos was formed and in operation prior to Cretty becoming a signatory to the collective bargaining agreement. It may be true, as Defendants

contend, that in many instances the non-union company is formed after the collective bargaining agreement is signed by the unionized company. However, such a requirement is conspicuously absent from the Second Circuit's enunciation of the factors to be considered in determining whether two companies are a single employer. *See Brown,* 250 F.3d at 128 n.2; *Lihli*, 80 F.3d at 747-48. Defendants do not cite, and this Court has not found, any cases holding that formation of the non-union company *after* a CBA is signed by the unionized company is a prerequisite for application of the single employer doctrine.

Second, that unspecified representatives of Local 282 may have been aware that Asbestos "existed and that Asbestos and Cretty operated and would continue to operate as separate businesses" and "never indicated that the existence and operation of both Asbestos and Cretty would conflict with the CBAs or that the relationship between Asbestos and Cretty would make Asbestos liable for any obligation under the CBAs," (Defs.' Opp. Mem at 8) does not present a defense to this collection action. *See Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990) (holding that only available defenses to a section 515 collection action are fraud in the execution and that the contributions are illegal); *DeVito v. Hempstad China Shop*, 38 F.3d 651, 653-54 (2d Cir. 1994).[6]

Not only are Cretty and Asbestos a single employer but the undisputed facts demonstrate that together they represent an appropriate employee bargaining unit. In determining whether employees constitute a single bargaining unit, the factors to be considered include "operational integration, geographic proximity, common supervision, similarity in job function and degree of

---

[6] Even if such a claim did constitute a defense, Defendants' allegations with respect to the Local's knowledge are conclusory and therefore insufficient to raise a question of fact.

employee interchange." *Brown*, 250 F.3d at 128 n.2. As set forth above, operational integration, common supervision, geographical proximity and employee interchange are all present in this case. Finally, it is undisputed that the employees of both Cretty and Asbstos perform the same job of driving trucks. *Cf. LaBarbera v. C. Volante Corp.*, 164 F. Supp. 2d 321, 326 (E.D.N.Y. 2001).

Defendants argue that Asbestos should not be considered a bargaining unit under the collective bargaining agreement because the "employees have not been harmed by the business relationship between Asbestos and Cretty." According to Defendants, "[f]or the most part, Cretty's drivers were initially drivers for Asbestos who were offered the opportunity to join Local 282 and reap the benefits, if any, of being a union driver. It was understood that if there was insufficient work for the drivers through Cretty, the drivers would be provided with the opportunity to work for Asbestos at the rate they had previously earned. The drivers for Asbestos never expected to be paid at the rates that they were being paid while driving for Cretty. Thus, Asbestos should not be considered a bargaining unit under the CBAs." (Defs.' Opp. Mem. at 14-15.) However, even assuming an absence of harm to Asbestos' drivers, harm to employees is not one of the factors to be considered in determining an appropriate bargaining unit.

In sum, the undisputed facts show that Cretty and Asbestos are a single employer and that together they constitute an appropriate bargaining unit.

## III. The Alter Ego Doctrine

"The alter ego doctrine, while having the same binding effect on a non-signatory as the single employer/single unit doctrine, is conceptually different." *Brown*, 250 F.3d at 128 n.3 (quoting *Truck Drivers Local Union No. 807 v. Reg'l Import & Export Trucking*, 944 F.2d 1037,

1046 (2d Cir. 1991)). "Although the factors used to determine alter ego liability are similar to those relevant to single employer status, '[t]he focus of the alter ego doctrine . . . is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or a technical change in operations.'" *Id.* (quoting *Lihli*, 80 F.3d at 748 (brackets in original)).

Here, Asbestos admits that it wanted to avoid the monetary obligations of a collective bargaining agreement but still be able to supply its customers with a union driver when requested. It attempted to accomplish both objectives by a technical change in operations, to wit, having Cretty sign the collective bargaining agreement so Asbestos could supply union drivers through Cretty, which drivers were also employed by Asbestos. Asbestos' motive, as well as, the common ownership, management, business purpose, operation, equipment and customers, all require that Asbestos and Cretty be treated as alter egos as a matter of law.

## IV. Relief

As discussed earlier in this opinion, Defendants have not disputed those amounts found by Plaintiffs' auditor. As to Cretty, the auditor determined that Cretty owed (1) contributions of $4,341.82 for the period December 28, 2000 through June 30, 2003, with interest thereon through February 5, 2007 in the amount of $3,290.17, and (2) contributions of $16,243.20 for the period of July 1, 2003 through June 30, 2005, with interest thereon through February 5, 2007 in the amount of $7,421.82. As to Asbestos, the auditor determined Asbestos owed contribution of $119,482.85 for the period December 28, 2000 through December 31, 2003, with interest thereon through February 5, 2007 in the amount of $86,500.67. These amounts being undisputed, summary judgment is granted in favor of Plaintiffs therefor against Cretty and Asbestos, jointly

and severally.

In addition, because Asbestos and Cretty are a single employer, Plaintiffs are entitled to conduct an audit of Asbestos for the period from January 1, 2004 through June 30, 2005. Asbestos shall submit to such an audit within sixty (60) days of the date hereof.

Plaintiffs seek summary judgment directing Cretty to post a surety bond as required under the terms of the CBAs. The CBAs submitted on this motion do require an employer, such as Cretty, to post a surety bond or alternative security. However, those agreements have expired and Cretty is not longer a signatory to any Local 282 Collective bargaining agreement. Plaintiffs have not pointed to any authority for requiring a surety bond under these circumstances. Accordingly, this portion of Plaintiffs motion for summary judgment is denied without prejudice. Should Plaintiffs elect to pursue this matter further, relevant authority must accompany the renewed application.

Finally, the Court notes that, with respect to the other items of monetary relief sought in the complaint, to wit, liquidated damages, audit fees, costs and attorneys' fees, Plaintiffs have not sought summary judgment as to the amounts therefor and they remain at issue.

## Conclusion

Plaintiff's motion for summary judgment is granted to the extent that Cretty and Asbestos shall be considered alter egos and/or a single employer and together constitute an appropriate bargaining unit part, and are jointly and severally liable for (1) $4,341.82, plus interest thereon through February 5, 2007 in the amount of $3,290.17; (2) $16, 243.20, plus interest thereon in the amount of $7, 421.82; and $119,482.85, plus interest thereon through February 5, 2007 in the amount of $86,500.67. Plaintiff's motion is further granted to the extent that Asbestos shall,

within sixty (60) days of the date hereof, submit to an audit of its books and records for the period January 1, 2004 through June 30, 2005.  To the extent Plaintiffs seek an order directing Cretty to post a bond, the motion is denied without prejudice.

**SO ORDERED.**

Dated: Central Islip, New York
      November 28, 2007

/s/_____
Denis R. Hurley
Senior District Judge